IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DAVID J. FEREZY,<br><br>    Plaintiff,<br><br>vs.<br><br>WELLS FARGO BANK, N.A.,<br><br>    Defendant. | No. 4:09-cv-00455 – JEG<br><br>**O R D E R** |

This matter comes before the Court on cross motions for partial summary judgment filed by Defendant Wells Fargo Bank, N.A. (Wells Fargo) and Plaintiff David J. Ferezy (Ferezy). Ferezy also filed a motion to strike portions of Wells Fargo's brief in support of its motion for summary judgment and two of Wells Fargo's statements of fact in support of its motion for summary judgment. The parties have not requested a hearing, and the Court finds that a hearing is unnecessary. This matter is fully submitted and ready for disposition.

## I.    SUMMARY OF MATERIAL FACTS AND PROCEDURE[1]

Wells Fargo actively supports its employees' charitable giving efforts. To that end, Wells Fargo provides employees with the option of fulfilling charitable commitments through payroll deductions. When employees elect payroll deductions for charitable donations, Wells Fargo withholds the dollar amount the employees specify for each pay period, and the money is distributed to the charities the employees select. Wells Fargo pays all processing costs associated with payroll deductions for charitable contributions. In 2008, Wells Fargo employees generated $2.25 million in contributions to various non-profits and $2.79 million in 2009. One of those non-profits, the United Way of Central Iowa, generally received $10,620,533.79 in

---

[1] The Court accepts undisputed facts, or views the facts in the light most favorable to the non-moving party. See Colenburg v. Starcon Int'l, Inc., 619 F.3d 986, 989 (8th Cir. 2010). Herein, Plaintiff has admitted all but one paragraph of Defendant's Statement of Undisputed Facts, see ECF No. 25-2, and the Court has disregarded that remaining paragraph. See Section B, infra at 3.

contributions through payroll deductions in 2008. About half of Wells Fargo's Des Moines area employees contributed to non-profits through Wells Fargo programs in 2008 and 2009.

Ferezy began his employment with Wells Fargo in 2008 and participated in the payroll deduction for charitable contributions program, pledging $52.00 to the United Way Youth Emergency Shelter and Services in 2008 and $200.00 to the Alzheimer's Association of Iowa in 2009. Ferezy, who had the option to fulfill his pledges by credit card, check, or payroll deductions, opted for the convenience[2] of payroll deductions. He could have cancelled his payroll deductions for charitable contributions at any time.

On October 16, 2009, Ferezy brought this lawsuit against Wells Fargo, alleging that Wells Fargo violated the Iowa Wage Collection Act, Iowa Code § 91A.5, by making payroll deductions for contributions to the United Way of Central Iowa, and that Wells Fargo fired Ferezy in violation of public policy. For purposes of these cross motions for summary judgment, Ferezy asserts his § 91A.5 claim on behalf of a potential class involving all Wells Fargo employees who made charitable contributions through payroll deductions provided by Wells Fargo.[3]

## II. DISCUSSION

### A. Standard for Summary Judgment

"Summary judgment is appropriate when the record, viewed in the light most favorable to the non-moving party, demonstrates that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Lykken v. Brady, 622 F.3d 925, 929

---

[2] The characterization of payroll deductions as a "convenience" comes from the Defendant's Statement of Undisputed Facts, paragraph 11, which the Plaintiff admits.

[3] Ferezy has made claims on behalf of a putative class of Wells Fargo employees, but this motion is addressed pre-certification of any class because the parties agree the issue is a purely legal one that could resolve class certification. Not at issue here is Ferezy's individual claim that, because Ferezy's authorization for payroll deductions resulted from coercion, Wells Fargo violated § 91A.5(1)(b).

(8th Cir. 2010) (quoting Cole v. Homier Distrib. Co., 599 F.3d 856, 864 (8th Cir. 2010)); Fed. R. Civ. P. 56(a). When unresolved issues are purely legal, summary judgment is particularly appropriate. See Union Pac. R.R. Co. v. Reilly Indus., Inc., 215 F.3d 830, 835 (8th Cir. 2000) (citing Crain v. Bd. of Police Comm'rs, 920 F.2d 1402, 1405-06 (8th Cir. 1990) ("Where, as here, the unresolved issues are primarily legal rather than factual, summary judgment is particularly appropriate.")).

### B. Motion to Strike

As an initial matter, the Court addresses a Motion to Strike, filed on October 15, 2010, attacking portions of Wells Fargo's summary judgment submission. In response to the motion, Wells Fargo agreed to withdraw the statements identified in Ferezy's motion to strike, thus mooting Ferezy's motion. The Court has disregarded those withdrawn statements.

### C. Payroll Deductions for Charitable Contributions Under Iowa Law

Section 91A.5(1) provides,

> An employer shall not withhold or divert any portion of an employee's wages unless:
>
> a. The employer is required or permitted to do so by state or federal law or by order of a court of competent jurisdiction; or
> b. The employer has written authorization from the employee to so deduct for any lawful purpose accruing to the benefit of the employee.

The parties dispute whether, under § 91A.5(1), payroll deductions for charitable contributions "accru[e] to the benefit of the employee." Iowa courts have not specifically interpreted the language at issue. However, this Court weighed the factors in Hatfield v. Bishop Clarkson Mem'l Hosp., 701 F.2d 1266, 1267-69 (8th Cir. 1983), finding resources were available to resolve the question without resort to speculation or conjecture, and denied Ferezy's motion to

certify this question of law to the Iowa Supreme Court.[4] It is undisputed that the class claim advances a purely legal theory, appropriate for resolution on summary judgment.

At issue on these cross motions for summary judgment is whether § 91A.5 allows private employers to make payroll deductions for charitable contributions when authorized by employees. Wells Fargo argues that the plain language of § 91A.5 does not prohibit payroll deductions for charitable contributions and that other evidence shows that payroll deductions for charitable contributions are allowed under Iowa law. Ferezy counters that "accruing" and "benefit" are ambiguous and that evidence shows that payroll deductions for charitable contributions are prohibited by § 91A.5 because such deductions do not have any tangible, financial benefits "accruing to the benefit of the employee."

The interpretation of a statute is a question of law for the Court to decide. Clay Cnty. v. Pub. Emp't Relations Bd., 784 N.W.2d 1, 4 (Iowa 2010). Summary judgment is an appropriate remedy when questions of statutory interpretation are controlling. See Bob Zimmerman Ford, Inc. v. Midwest Auto. I, L.L.C., 679 N.W.2d 606, 608 (Iowa 2004) (citing Burton v. Univ. of Iowa Hosps. & Clinics, 566 N.W.2d 182, 185 (Iowa 1997)).

> [Iowa's] rules of statutory interpretation are well established. When [the Court] interpret[s] a statute, [it] attempt[s] to give effect to the general assembly's intent in enacting the law. Generally, this intent is gleaned from the language of the statute. [The Court] do[es] not search for meaning beyond the express terms of a statute when the statute is plain and its meaning is clear.

In re Detention of Fowler, 784 N.W.2d 184, 187 (Iowa 2010) (internal citations and quotation marks omitted). In analyzing the language of a statute, the Court "give[s] words their ordinary and common meaning by considering the context within which they are used, absent a statutory definition or an established meaning in the law." Doe v. Iowa Dep't of Human Servs., 786 N.W.2d 853, 858 (Iowa 2010); see also State v. McCoy, 618 N.W.2d 324, 325 (Iowa 2000)

---

[4] See ECF No. 22.

4

("Words are given their usual and ordinary meaning absent an express legislative definition or a particular meaning in law."). "Plain language or plain meaning of a statutory provision is not limited to the meaning of individual terms, but rather, such inquiry requires examining the text of the statute as a whole by considering its context, object, and policy." Forbes v. Hadenfeldt, 648 N.W.2d 124, 126 (Iowa 2002) (citing Voss v. Iowa Dep't of Transp., 621 N.W.2d 208, 211 (Iowa 2001)).

As the Iowa Supreme Court has instructed,

> [w]hen called upon to interpret a statute, we first determine whether the legislative enactment is ambiguous. If it is clear and unambiguous, we give [the] statute a plain and rational meaning. If, on the other hand, the statute is ambiguous, we rely on well-established rules to aid our interpretation. A statute or rule is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute.

Larson Mfg. Co., Inc. v. Thorson, 763 N.W.2d 842, 859 (Iowa 2009) (citations and quotation marks omitted).

Citing Larson Mfg., Ferezy argues that the competing legal arguments over the definitions of "accrue" and "benefit" establish the ambiguity of the terms, and that the Court must therefore resort to various canons of statutory interpretation beyond the plain meaning of the language. Ferezy's reliance is misplaced. In Larson Mfg., the parties advanced competing legal arguments as to when a person becomes eligible for disability benefits due to a cumulative, progressive injury, drawing into question both the temporal and substantive application of "after the injury" under Iowa Code § 85.33. Id. at 858-60. The Larson Mfg. court concluded that in determining when an injury becomes compensable for partial disability benefits, the language "after the injury" is ambiguous because the competing legal arguments showed that reasonable minds could differ on whether an injury could be compensable if the injury arose before the manifestation date found by the commissioner determining benefit eligibility. Id. In the case at bar, the Court does not find the terms "accrue" and "benefit" in the context of the statute to generate a

5

similar reasonable difference. Here, unlike in Larson Mfg., the definitional conflict can be resolved by relying on methods employed by courts to analyze the plain language of a statute to glean the legislature's intent behind enactment of the statute. See McGill v. Fish, 790 N.W.2d 113, 118 (Iowa 2010) ("We do not search for legislative intent beyond the language of a statute when that language is plain and the meaning is clear . . . . [W]e presume words used in a statute have their ordinary and commonly understood meaning [and] rely on the dictionary as one source to determine the meaning of a word left undefined in a statute." (citations omitted)).

Ferezy's reading of the statute goes beyond the ordinary meaning of the language to exclude charitable deductions from the phrase "accruing to the benefit of the employee." Without an express definition attached to the phrase "accruing to the benefit of the employee" excluding payroll deductions for charitable contributions, neither a positive nor negative framing of the issue[5] logically supports Ferezy's assertions.

Ferezy asserts that the terms "accrue" and "benefit" indicate the legislature only intended to include deductions that had a "tangible, financial" upside. Pl. Br. 5, ECF No. 25. Such a restrictive reading does not track the unambiguous, ordinary meanings of "accrue" and "benefit," which in common and ordinary vernacular encompass much more than purely tangible, financial matters, in the absence of a limiting statutory definition. See Teamsters Local Union No. 421 v. City of Dubuque, 706 N.W.2d 709, 717 (Iowa 2005) (holding that courts avoid absurd results by interpreting statutes in a commonsense manner); see also State v. Petithory, 702 N.W.2d 854,

---

[5] Framed in the affirmative, the issue is "[W]hether the 'accruing to the benefit of the employee' portion of Iowa Code § 91A.5(1)(b) includes [employee authorized] charitable donations that employers collect through employee wage deductions." Pl. Mot. to Cert. Question of Law Br. 18, ECF No. 16-1.
   Framed in the negative, the issue becomes whether the Iowa legislature, by including "accruing to the benefit of the employee" in Iowa Code § 91A.5(1)(b), prohibits private employers' payroll deductions for charitable contributions.

6

859 (Iowa 2005) (interpreting statute consistent with common sense); Harrington v. State, 659 N.W.2d 509, 520 (Iowa 2003) (same).

Courts also look to dictionary definitions to ascertain the common meanings of words used in a statute. See Miller v. Marshall Cnty., 641 N.W.2d 742, 748 (Iowa 2002) (holding that courts may consider dictionary definitions in giving statutory terms their ordinary meanings); see also Swiss Colony, Inc. v. Deutmeyer, 789 N.W.2d 129, 137 (Iowa 2010) (citing the definition of "any" from Merriam-Webster's Collegiate Dictionary in analyzing its plain language meaning as used in Iowa Code § 85.34(5)); Rock v. Warhank, 757 N.W.2d 670, 675-76 (Iowa 2008) (citing the definition of "through" from Merriam-Webster's Collegiate Dictionary in analyzing its plain language meaning as used in Iowa Code § 614.1(9)); Stewart v. Stewart, 687 N.W.2d 116, 118 (Iowa Ct. App. 2004) (en banc) (citing the definition of "agreement" from Black's Law Dictionary in analyzing its plain language meaning as used in Iowa Code § 236.5).

Contrary to Ferezy's assertions, a thorough review of dictionary definitions does not limit "accrue" to only tangible or financial matters.[6] Indeed, the dictionary definition, which provides for the specific prepositional modification of accrue as used in Iowa Code § 91A.5(1)(b), sets forth the following: "to come by way of increase or addition: arise as a growth or result – usu. used with *to* or *from* <advantages *accruing* to society from the freedom of the press>." Webster's Third New International Dictionary, Unabridged 13 (2002). The dictionary, in turn, defines "advantage" as a "benefit, profit, or gain of any kind." Id. at 30. The inclusion of benefit in a

---

[6] Ferezy asserts that Black's Law Dictionary 20 (6th ed. 1990) so limits accrue to tangible, financial matters; however, the definition Ferezy cites that restricts accrue to the sense of "due" or "payable" applies only in the past tense, which is not its usage in § 91A.5(1)(b). The most current edition of Black's Law Dictionary defines accrue as, "[t]o come into existence as an enforceable claim or right; to arise . . . ." Black's Law Dictionary 23 (9th ed. 2009). Thus, according to Black's Law Dictionary, § 91A.5(1)(b) could be read as allowing employers to deduct wages when "[t]he employer has written authorization from the employee to so deduct for any lawful purpose [coming into existence or arising] to the benefit of the employee," which does not indicate that benefits are limited to tangible or financial matters.

7

disjunctive series with profit indicates a non-monetary meaning of benefit and application of accrue, while the inclusion of "of any kind" indicates that advantages may be non-tangible.

Likewise, the ordinary meaning of benefit as evidenced by its dictionary definition is not restricted to tangible, financial matters. Of course, a benefit may be a payment or gift, but a benefit may also be "something that guards, aids, or promotes well-being." Id. at 204; see also Black's Law Dictionary 178 (9th ed. 2009) (defining benefit as "1. Advantage; privilege . . . . 2. Profit or gain . . . ."). In common English usage, the phrase "it will be to your benefit" would not be restricted to "tangible, financial" matters. Cf. Harrington, 659 N.W.2d at 520 (interpreting statute consistent with common sense). Such a narrow reading would exclude commonly considered benefits such as convenience, health, opportunity, safety, and good-will. Cf. id. Thus, under the plain meaning of the statutory language, a deduction may accrue to the non-tangible, non-financial benefit of the employee. Indeed, the language of § 91A.5(1)(b) is unambiguous because the terms at issue cannot reasonably be read in a manner as restrictive as Ferezy posits. See Larson Mfg., 763 N.W.2d at 859 ("A statute or rule is ambiguous if reasonable minds could differ or be uncertain as to the meaning of the statute."). Accordingly, the common meanings of "accrue" and "benefit," as evidenced by dictionary definitions, show that payroll deductions may accrue to the benefit of the employee and, therefore, are allowed under § 91A.5(1)(b).

Wells Fargo asserts that various possible benefits arise from payroll deductions for charitable contributions, including gaining a charitable deduction, having the employer incur processing costs and burdens connected with employees' obligations, and other "personal" and "psychic" benefits. Def.'s Br. 10, 11, ECF No. 15-1. Reading the statutory language in the context of the wage payment collection law does not manifest an obvious exclusion of payroll deductions for charitable contributions. The statute plainly allows authorized deductions that provide some advantage to the employee. Tax advantages are one such obvious benefit to an

8

employee who has his charitable contributions deducted from his paycheck. However, although Ferezy agrees that a charitable tax deduction could constitute the requisite benefit under § 91A.5(1)(b), he argues that because an employee might not take an itemized deduction for charitable contributions, potential tax advantages of donating cannot be considered a benefit. It is axiomatic, however, that the question of whether programs such as health savings accounts, travel savings accounts, or estimated tax payments rest under the umbrella of "accruing to the benefit" of employees is not controlled by the fact some employees may choose to forego them. Because Ferezy's motion challenges the statute on its face, rather than as applied, as Ferezy concedes, tax advantages can constitute the requisite benefit accruing to the employee under § 91A.5(1)(b).

Furthermore, an employer reducing transaction costs is a benefit for the employee. Like the transaction costs that are shouldered by employers who deduct for various plans and estimated taxes, similar transaction costs are shouldered by the employer who provides for payroll deductions for charitable contributions.

Ferezy's position that "accruing to the benefit of the employee" does not include an employee's *authorized* charitable donation ignores the intangible benefits an employee receives by choosing to give to charities through payroll deductions.[7] Considering a rational person endowed with common sense, an employee who voluntarily authorizes charitable donation deductions from his paycheck must find some benefit in doing so, and the benefit may be tangible, financial, abstract, psychological, somatic, or otherwise. Cf. United States v. Speakman, 594 F.3d 1165, 1178 (10th Cir. 2010) ("[M]ost individuals who donate to charity receive a psychic benefit for their donation . . . ."). When considering the legality of payroll

---

[7] The Court does not herein address whether proven coercion and duress would effectively undermine the authorization required under the statute.

9

deductions for charitable contributions in the abstract, what an employee considers the benefit is irrelevant, as long as there is a possible benefit in authorizing the employer to so deduct.

When reading § 91A.5 as a whole, it is apparent that the statute was aimed at prohibiting employers from deducting wages for purposes that benefit the employer or are otherwise illegal under federal or state law. Section 91A.5(2) includes a list of prohibited deductions, all of which would benefit the employer to the detriment of the employee, including cash shortages from a money till, losses for bounced checks, damage, and stolen property. Iowa Code § 91A.5(2)(a)-(d). It also prohibits the employer from capturing gratuities given to employees, costs of personal protective equipment, and costs of relocation. Iowa Code § 91A.5(2)(e)-(g). A voluntary charitable contribution simply does not parallel any of the enumerated prohibited payroll deductions. Therefore, taken in context, the statute's plain meaning allows payroll deductions for charitable contributions because such contributions do not exclusively benefit the employer to the detriment of the employee. Doe, 786 N.W.2d at 858 (reasoning that statutes are to be read in context when ascertaining plain meaning).

Even assuming *arguendo* that analysis of the language in § 91A.5(1)(b) were not conclusive and the statute were ambiguous, further analysis using the rules of statutory interpretation reveal that inclusion of "accruing to the benefit of the employee" in § 91A.5(1)(b) does not prohibit payroll deductions for charitable contributions. Iowa courts "interpret a statute consistently with other statutes concerning the same or a related subject." State v. Pickett, 671 N.W.2d 866, 870 (Iowa 2003). Iowa Code §§ 70A.15 and 70A.15A authorize payroll deductions for charitable contributions for public employees. Ferezy argues that because the Iowa legislature is familiar with the concept of payroll deductions for charitable contributions and chose not to explicitly include such deductions in § 91A.5, the legislature could not possibly have intended to allow payroll deductions for charitable contributions under § 91A.5(1)(b). Wells Fargo counters that the distinction between public employees covered by §§ 70A.15 and

10

70A.15A and private employees covered by § 91A.5 leads to the conclusion that the legislature intended for employers to be able to make payroll deductions for charitable contributions. Indeed, private employees and employers are subject to fewer statutory provisions than are public employees.[8] Any deduction of Iowa public employees' wages must be statutorily authorized, Iowa Code §§ 8A.515 and 8A.516 (2009),[9] see also 1968 Iowa Op. Att'y Gen. 445 ("Authority by way of legislation to make a deduction from a [state employee] statutory salary is required."); whereas no analogous requirement exists for private employers/employees. Sections 70A.15 and 70A.15A demonstrate that the Iowa legislature intended for employers to be able make payroll deductions for charitable contributions because the legislature authorized such deductions when it was required to specify allowable deductions for state employees.

Additionally, the Iowa income tax laws provide for payroll deductions for charitable contributions, Iowa Code § 422.9(2); and the Iowa Department of Workforce Development (the IDWD), which administers the Iowa Wage Collection Act, has issued regulations that allow employees to voluntarily assign or order an employer to deduct wages to be paid to a donee under Iowa's minimum wage law, Iowa Admin. Code r. 875-217.40(91D) (2010).[10] Although the IDWD has not issued regulations interpreting which deductions are allowable under § 91A.5,[11] it would be a strained interpretation to hold that the Iowa legislature intended for the

---

[8] There are specific provisions for public employees that address conflicts of interest, nepotism, contracting duties, and hiring procedures that do not apply to private employees. See Iowa Code §§ 68B.1-.39; 71.1-.2; 72.1-.5; and 73.1-.21.

[9] Provisions moved during 2010 legislative session to Iowa St. §§ 8.85 and 8.86, respectively. 2010 Iowa Legis. Serv. S.F. 2088 §§ 189-90.

[10] Ferezy argues that the regulation does not *explicitly* include charitable deductions; however, a "donee" is anyone to whom a gift is made, which includes charities as recipients of donations made through payroll deductions. See Black's Law Dictionary 562 (9th ed. 2009).

[11] Regulations implementing Chapter 91A.5 are found at Iowa Admin. Code r. 875-35.1(91A)-.5(91A).

IDWD to allow payroll deductions for charitable contributions under the Iowa minimum wage act but prohibit them under the Iowa Wage Collection Act.  See State v. Boggs, 741 N.W.2d 492, 502 (Iowa 2007) ("Generally, . . . we refrain from an interpretation that is strained."); Pickett, 671 N.W.2d at 870 ("[S]tatutes are interpreted in a manner to avoid absurd results.").  Thus, it would be inconsistent with other Iowa statutes regarding payroll deductions for charitable contributions to interpret § 91A.5 as prohibiting such deductions.  Rather, reading the Iowa Wage Collection Act in harmony with other Iowa laws, payroll deductions for charitable contributions are allowed under § 91A.5(1)(b).  See id.

Because the Court's analysis of § 91A.5 does not reveal that the Iowa legislature intended to prohibit payroll deductions for charitable contributions by including the language "accruing to the benefit of the employee," but rather it intended to allow them, Wells Fargo is entitled to judgment as a matter of law on the class claim.[12]

## III. CONCLUSION

Based on the foregoing, the Court finds that Iowa Code § 91A.5(1)(b) does not prohibit payroll deductions for charitable contributions.  Accordingly, Wells Fargo's Motion for Partial Summary Judgment (ECF No. 15) must be **granted**, and Ferezy's Motion for Partial Summary

---

[12] Wells Fargo also argues that under In re Marriage of Anderson, 400 N.W.2d 84, 85 (Iowa Ct. App. 1986), payroll deductions for charitable contributions are allowed in Iowa. Anderson states, "[p]ayroll deductions may be made for convenience and for other than taxes and employment related expenses (example *charitable deductions*, insurance payments, pensions and savings plans)."  Anderson, 400 N.W.2d at 85 (emphasis added).  Ferezy urges the Court to ignore Anderson because the statement referencing charitable deductions is dicta.  While the Court accepts the language in Anderson is not controlling and does not rely on that case in reaching the decision herein, Anderson does appear to accept as beyond the need for citation that payroll deductions for charitable contributions are common in Iowa, so that the apparently only Iowa authority reflecting on such payroll deduction procedures is at least inferentially inconsistent with Ferezy's argument.

Judgment (ECF No. 25) must be **denied**. Ferezy's Motion to Strike (ECF No. 26) is **denied** as moot.

**IT IS SO ORDERED.**

Dated this 21st day of December, 2010.

JAMES E. GRITZNER, JUDGE
UNITED STATES DISTRICT COURT